each and every of the instructions given as above, and to the refusal of the court to instruct the jury as requested, in each and every of the 36 prayers as heretofore annexed, and the court, at their instance, seal this bill of exceptions.

The jury then retired, and after a very brief absence found for the plaintiff in the sum of $17,601.52.

## Case No. 11,983.

### ROCKSELL et al. v. ALLEN.

[3 McLean, 357.] [1]

Circuit Court, D. Indiana. May Term, 1844.

EXECUTION — MARSHAL'S SALE — DEFENDANT'S TITLE—PURCHASER—MOTION TO SET ASIDE SALE.

1. A marshal's sale of land on execution, where the defendant had no interest in the land, will be set aside on motion.

2. In such sale there is no warranty by the defendant. The purchaser must understand what he buys.

3. But where he has been deceived or misinformed, the court will release him, by setting the sale aside. This is a proper mode of giving relief, if application be made before the sale shall be completed.

[Cited in Brunner v. Brenan, 49 Ind. 100.]

In equity.

OPINION OF THE COURT. Mr. Smith moved the court to set aside a sale of real estate made on execution in the above case, on the ground that the defendant had no title to the land or interest in it at the time of the sale. Before the judgment Allen, the defendant, conveyed the land to one Coates, taking a mortgage to secure the payment of the purchase money, which mortgage Allen had assigned, so that he had no interest in the land either equitable or legal.

Mr. Morrison, who opposed the motion, did not controvert the facts, but insisted that as the deed to Coates was on record, the purchaser was bound to know the state of the title, and having made the purchase with this knowledge he was entitled to no relief. That the maxim of caveat emptor applied with peculiar force to judicial sales. That the court would not, under the circumstances of that case, give relief to the purchaser on a motion, but would, if he were entitled to relief leave him to a suit in chancery.

It is clear that the defendant does not warrant the title of his land sold on execution. And if the sheriff or marshal, who sells, does not warrant it, he may bind himself, but not the defendant, in the execution. The Monte Allegre, 9 Wheat. [22 U. S.] 616; Louden v. Robertson, 5 Blackf. 276.

But the case before us is, whether a purchaser of land under execution, to which the defendant had no title, shall be compelled to complete his purchase. In Muir v. Craig, 3 Blackf. 293, the court gave relief on a bill

filed against Craig, the defendant, in execution, whose land, as was supposed, had been sold on execution, but in which he had no interest, on the ground that the money received had been applied to the payment of the defendant's judgment. The amount paid was decreed to be refunded. It may be doubted whether this did not carry the principle too far. The purchaser must look to what he buys. But in the case before us, the question is, whether the purchaser shall pay his money where no interest was transferred to him under the judgment. He may have been negligent, but before the purchase is completed, he applies to be relieved, by setting aside the sale. That he had no notice in fact, whatever might be the inference of law, must be presumed, as no one would purchase that which he knew to be of no value. Whatever might be proper after the payment of the money and the execution of the sheriff's deed, we think when the application is made, at this stage of the proceedings, the sale should be set aside. And this summary mode by motion, being the least expensive, is the proper one.

## Case No. 11,984.

### ROCKVILLE & W. TURNPIKE ROAD v. ANDREWS.

[2 Cranch, C. C. 451.] [1]

Circuit Court, District of Columbia. April Term, 1824.

STATUTES—PAMPHLET EDITION—EVIDENCE.

[This was an action on the case by the president, managers, and company of the Rockville & Washington Turnpike Road against Christopher Andrews.]

In this case, which was like the two preceding cases [Cases Nos. 11,985 and 11,986] THE COURT (nem. con.) decided that the pamphlet of the laws of Maryland, published by the authority of the legislature of that state, and proved by a witness to be the book which is admitted as evidence of the laws of Maryland in the courts of Maryland, is admissible evidence of the act of incorporation of the president, managers, and company of the Rockville and Washington Turnpike Road.

Verdict for plaintiff. A bill of exceptions was taken by the defendant, but no writ of error prosecuted.

## Case No. 11,985.

### ROCKVILLE & W. TURNPIKE ROAD v. MAXWELL.

[2 Cranch, C. C. 451.] [1]

Circuit Court, District of Columbia. April Term, 1824.

CORPORATIONS—STOCK SUBSCRIPTION—ACTION BY CORPORATION TO RECOVER.

The Rockville and Washington Turnpike Company may maintain an action against a stock-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

holder for the amount of his subscription, and are not obliged to resort to a sale of his shares.

[This was an action on the case by the president, managers, and company of the Rockville & Washington Turnpike Road against George P. Maxwell.]

This was a case like the preceding case [Case No. 11,986], and THE COURT (nem. con.) decided that the plaintiff was not confined to the remedy by a sale of the shares of a delinquent stockholder, but had a substantive cause of action against him for the subscription money; and that a subscriber could not discharge himself from his obligation by an abandonment of his shares.

## Case No. 11,986.

### ROCKVILLE & W. TURNPIKE ROAD v. VAN NESS.

[2 Cranch, C. C. 449.] [1]

Circuit Court, District of Columbia. April Term, 1824.

CORPORATIONS — STOCK SUBSCRIPTION—ACTION TO RECOVER—ESTOPPEL.

1. The commissioner's book of subscriptions is prima facie evidence that the subscriptions were genuine, or made by persons duly authorized; and the fact that the defendant was appointed, by the stockholders, one of the managers, and had acted as such, is prima facie evidence of an admission, on his part, of the existence of the corporation.

[Cited in Turnbull v. Payson, 95 U. S. 421.]

[Cited in brief in Fisher v. Seligman, 75 Mo. 19.]

2. Directors de facto, of a corporate body are to be considered, prima facie, as directors de jure.

[Cited in U. S. v. Williams, Case No. 16,-713.]

3. It is not incumbent on the plaintiff to prove that the managers were elected by a majority of votes.

[Cited in Slocum v. Warren, 10 R. I. 122.]

4. It is not competent for any stockholder to deny the existence of a corporation.

5. It is not competent for a real original subscriber to the company, who was one of the commissioners, named in the act of incorporation, for receiving subscriptions, and who acted as such, and who was afterwards, at a meeting of the stockholders, elected as one of the managers, and acted as such, to object, in an action by the company against him for not paying the instalments called for, that a sufficient number of shares had not been subscribed to justify such election.

This was an action on the case [by the president, managers, and company of the Rockville & Washington Turnpike Road] for $1,615, being the amount due from the defendant [John P. Van Ness,] for his subscription upon eighty-five shares of the capital stock. The plaintiffs read the act of Maryland of February 3, 1818, (c. 97), entitled "An act to incorporate companies to make certain turnpike roads through the counties of Montgomery, Frederick, and

<hr>

[1] [Reported by Hon. William Cranch, Chief Judge.]

Washington, and for other purposes," and also the act of congress of February 15, 1819 (3 Stat. 482), entitled "An act to authorize the president and managers of the Rockville and Washington Turnpike," &c., and also the original subscription book opened at the city of Washington, by the defendant and the other commissioners named in the Maryland act, and the book containing the original minutes of the proceedings of the company, showing the time of the organization of the company, and the election of the defendant as one of the managers, and his acting as such, and the orders for the payment of the instalments, etc.

Mr. Hay, for defendant, contended that the plaintiff must show itself to be a body corporate, and must prove that the 1500 shares required by the charter to be subscribed, were actually taken by real bona fide subscribers, and offered evidence to prove that the subscription of J. H. Blake, for fifteen shares, as entered in the subscription book by the defendant, was so entered by the defendant without the authority of the said Blake; that it was made publicly without specifying or alleging any authority therefor; and was so made from a desire to complete the subscription in order to justify the organization of the company, and under an expectation that such subscription would be ratified by the said Blake, whose name was thus subscribed. Mr. Hay also offered to prove that so many of the subscriptions were made in the names of persons without their authority as would reduce the number of shares actually subscribed for below 1500, the number required by the charter as a prerequisite to the organization of the company.

Mr. Jones, contra. The company was actually organized, managers chosen, of whom the defendant was one. The plaintiff cannot be bound in an action against this defendant, a stockholder, to prove the handwriting of all the subscribers, nor that the subscriptions were bona fide. As against this defendant, the book of subscriptions is conclusive evidence. The plaintiff is only bound to prove that it is acting as a corporation de facto. This court has so decided in the case of Mechanics' Bank of Alexandria v. Minor [Case No. 9,385]. If it is a corporation de facto, it must be presumed to be so de jure, until those who exercise the franchise shall be removed by quo warranto.

THE COURT (nem. con.) refused to receive the evidence offered, saying that, as the defendant was a real original subscriber to the company, and was one of the commissioners for receiving the said subscriptions, and was elected one of the managers of the said company, and acted as such, in virtue of the said election, it was not competent for him, in this action, to object that a sufficient number of shares had not been subscribed to justify such election.

THE COURT also (nem. con.) was of opin-